IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Sharon R. Krueger, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-00057 |
| | ) | |
| Social Security Administration | ) | |
| Commissioner, Michael J. Astrue, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Sharon R. Krueger (hereafter "Krueger", "plaintiff", or "claimant") initiated this

action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of

Social Security (hereafter "Commissioner" or "defendant") denying her application for disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Both parties

have moved for summary judgment (Doc. #10, Doc. #12).

**Summary of Recommendation**

The magistrate judge finds the Administrative Law Judge (hereafter "ALJ") adequately

explained and supported her determination that Krueger was not disabled with substantial evidence

from the record as a whole.  It is **RECOMMENDED** that the decision of the Commissioner be

**AFFIRMED**.

**Background**

Krueger protectively filed her application for disability insurance benefits on September 28,

2009 under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Krueger alleged a disability

onset date of October 17, 2008.  (Tr. 122-23).  Krueger's application was denied on initial review

and again on reconsideration. (Tr. 75-78, 80-82). She requested a hearing on March 15, 2010. (Tr. 83-84 ). A hearing was held before ALJ Hallie E. Larson. (Tr. 24-70 ). Krueger appeared with her attorney, Gary Ficek, and testified at the hearing. (Tr. 26-70 ). Robert Van Eiderstein, a vocational expert, also testified at the hearing. (Tr. 26). The ALJ issued a decision on April 7, 2011, finding that Krueger was not diabled. (Tr. 6-18). Krueger requested a review of the ALJ's decision on April 16, 2011. (Tr. 5 ). The Appeals Council denied Krueger's request for review of the ALJ's decision (Tr. 1-4 ), making the ALJ's decision the final decision of the Commissioner.

Krueger was 50 at the time of the hearing. (Tr. 31). She graduated from high school and attended two years of college. (Tr. 31). Prior to her alleged disability date, Krueger worked as a branch administrator at a roofing and building supply distributor. (Tr. 33). Krueger has worked after her alleged disability onset date performing clerical work for her spouse's business for three hours a day in a five-day work week. (Tr. 35-36). Krueger alleges she is disabled because she suffers from osteoarthritis, fibromyalgia, degenerative disc disease, and carpal tunnel syndrome. (Tr. 36-38); Plaintiff's Br., Doc. #11.

**Legal Standard**

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). To affirm the Commissioner's decision, the court must find substantial evidence appearing in the record as a whole supports the decision. See id.; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). "Substantial evidence is such relevant evidence as a reasonable mind might find adequate to support a conclusion." Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996) (internal quotation omitted)."This standard requires a more searching review than the substantial evidence standard, and [the court will] take into account record evidence that fairly detracts from the

ALJ's decision." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (citing Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009)).

The court must "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Minor, 574 F.3d at 627 (citing Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)) (quoting Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1998)). See also, Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998) ("As this court has repeatedly stated, the 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard."); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987) ("It is not sufficient for the district court to simply say there exists substantial evidence supporting the [Commissioner] and therefore the [Commissioner] must be sustained."). "If in reviewing the Social Security Commissioner's denial of an application for disability benefits it is possible to reach two inconsistent positions from the evidence, and one of those positions represents the Commissioner's decision, the court must affirm the decision." Lorence v. Astrue, 691 F.Supp.2d 1008 (D. Minn. 2010). The "court will not disturb [the] denial of social security disability benefits so long as ALJ's decision falls within [an] available zone of choice." Casey v. Astrue, 503 F.3d 687, 691 (8th Cir. 2007).

### Discussion

The ALJ applied the familiar five-step test to determine whether Krueger was disabled.[1] (Tr. 9-11). ALJ Larsen determined that Krueger had not engaged in any substantial gainful activity

---

[1] The five steps are: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) whether the claimant can return to his past relevant work; and (5) whether the claimant can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(5)(i)-(v).

since October 17, 2008. (Tr. 11). The ALJ noted Krueger has worked fifteen hours a week for her spouse's business since her alleged disability onset date, but that work activity did not qualify as substantial gainful activity. (Tr. 11). ALJ Larsen found that Krueger has the following severe impairments, which do not meet or equal any listed impairment: fibromyalgia, osteoarthritis, degenerative disc disease, and carpal tunnel syndrome. (Tr. 11). The ALJ also discussed Krueger's history of congenital heart disease, history of hepatitis C, history of renal failure, migraine headaches, hyperthyroidism and gastrointestinal issues (Tr. 12), but found these conditions non-severe, noting that most were resolved or would have little impact on the claimant's ability to sustain substantial gainful activity. (Tr. 12).

The ALJ determined Krueger could not perform her past relevant work as a financial office manager. (Tr. 16). However, the ALJ concluded Krueger has the residual functional capacity to perform light work, with a sit/stand option or limitation. (Tr. 13, 17).[2] Given Krueger's residual functional capacity with a sit/stand option, the vocational expert indicated Krueger could work as an information clerk, gate guard, or storage rental clerk. (Tr. 17-18).

Krueger alleges ALJ Larsen erred in her evaluation of Krueger's disability claim by: (1) performing an improper credibility analysis of Krueger's subjective complaints of pain; (2) conducting an improper credibility analysis of third-party lay witnesses; (3) failing to attribute the proper weight to the opinion of claimant's treating physician; and (4) failing to support her finding that Krueger was not disabled with substantial evidence in the record. Plaintiff's Br., Doc. #11.

---

[2] Light work requires the claimant have the capacity to "lift and/or carry 10 pounds frequently and 20 pounds occasionally. . . . sit and stand or walk about 6 hours each in an 8-hour day with normal breaks and with the opportunity to alternate positions after 30 minutes. . . . to occasionally climb, balance, stoop, kneel, crouch, and crawl. . . . occasionally finger with the right upper extremity. . . ." (Tr. 13); 20 C.F.R. 404.1567(b).

**A. Subjective Complaints of Pain: The ALJ's Credibility Analysis**

Krueger contends the ALJ erred at step four of the disability process because she failed to properly evaluate Krueger's subjective complaints of pain under Polaski v. Heckler.[3] Plaintiff's Br., at 19-21, Doc. #11. At step four the ALJ evaluated Krueger's subjective complaints of pain and concluded, "[Krueger's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Krueger's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 14). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ need not discuss each Polaski factor in her evaluation of the claimant's credibility. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). Here, the ALJ's credibility determination considered the five factors set forth in Polaski.

With regard to the first factor, daily activities, the ALJ concluded, " . . . the claimant has real limitations secondary to her severe impairments and pain. However, the objective observations do not reflect that the claimant's condition has deteriorated so precipitously as to preclude work activities consistent with the residual functional capacity established above." (Tr. 14). To support her credibility determination, the ALJ considered the following facts:

> [C]laimant testified at [the] hearing to an essential inability to effectively engage in even sedentary activities. . . . She testified she experiences pain with lifting even a gallon of milk. She additionally testified that she could only stand in one spot about 7 minutes

---

[3] Polaski v. Heckler, requires an ALJ to consider the following factors when making determinations regarding the credibility of a claimant's subjective allegations of pain: the observations of third parties and claimant's treating and examining physicians as they relate to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

at a time and walk about 20 minutes before needing to take a break. She likewise reported that she could only sit for 20-25 minutes before needing to change positions. . . . The claimant testified that she must frequently change positions because of pain. . . . She explained that the only time she experiences relief is when she reclines with her legs elevated and a pillow under her knees. . . . The claimant testified, while she spends a couple hours per day working in her spouse's business, she spends about 5 hours reclining in a chaise lounger in a typical 8-hour day because of her pain. She noted that she experiences pain at a level 7-8 even at rest and with narcotic pain medication.

(Tr. 13-14). To support the credibility of her own testimony, Krueger contends the ALJ completely failed to consider her limited daily activities. Plaintiff's Br., at 20, Doc. #11. Krueger's contention is inaccurate. The court finds the ALJ acknowledged and considered the claimed limits on Krueger's daily activities, as cited above. Krueger further argues the ALJ improperly considered and inferred from the objective medical evidence on record that Krueger's subjective complaints of pain and the effect her pain has on her daily activities were not credible. Plaintiff's Br., at 21-22, Doc. #11. Krueger's argument disregards the fact that under Polaski an ALJ must evaluate the objective medical evidence on record to properly conduct a credibility analysis with regard to claimant's daily activities. Casey, 503 F.3d at 695.

The court's thorough review of the entire record reveals Krueger's reported pain levels during office visits to her treating physicians varied, but generally ranged between a pain level of 3-4 and 5-6.[4] (Tr. 228-262, 373-426, 444-567). During office visits and exams, Krueger also

---

[4] From her alleged onset date of October 8, 2008 until March 2009 treatment notes are sparse and inconsistent with regard to Krueger's pain related to osteoarthritis, disc degeneration, and fibromyalgia. (Tr. 232-56). On October 28, 2009, she reported during an office visit with Dr. Emery, her primary care provider, that her pain level was much worse since she had been off pain medications. Krueger reported her pain level at 5-6. (Tr. 349). In April 2010, Krueger reported a pain severity level of 4 located in her hips and legs, but also stated the pain medication, Savella, worked nicely for her fibromyalgia. (Tr. 395-96 ). Later, in February 2011, Krueger reported pain levels at 7-8 which frequently interrupted her sleep. (Tr. 453).

reported varying degrees of activity as well.[5]  Generally, Krueger reported her pain was exacerbated

by movement.  (Tr. 228-262, 373-426, 444-567).  However, there is little evidence in Krueger's

treatment records that she reported to her treating physicians the type of severely limited daily

function and pain levels to which she testified at her disability hearing.  While the objective findings

of plaintiff's medical practitioners support a diagnosis of fibromyalgia syndrome, osteoarthritis, and

degenerative disc disease, the treatment plans based on physicians' objective physical evaluations of

the plaintiff and the subjective symptoms she reported to them do not support the type of severe and

disabling pain the plaintiff claims to experience due to her severe impairments.

With regard to the second factor, the ALJ discussed throughout her credibility analysis the

claimant's claims of the persistence, duration, and frequency of her pain levels, noted the objective

observations of claimant's treating physicians during claimant's examinations, and the treatment

plans resulting from claimant's reported pain levels and the physician's clinical observations.  The

court's review of the record indicates the ALJ's review of the objective medical evidence is accurate.

See infra note 4-5, at 6-7.

The ALJ considered the third, fourth, and fifth factors as well.  She discussed at length the

types and quantities of prescribed medications Krueger took for her medical impairments.  (Tr. 15).

She noted "claimant was previously prescribed Cymbalta for pain control.  While the Cymbalta was

apparently helpful in terms of pain relief, [Krueger] was switched to Savella which has been

identified as working nicely for her fibromyalgia;" the ALJ further noted, "claimant . . . started

---

[5]  In May 2010, during a visit to Dr. Vandrovec at Sanford's Pain Clinic, Krueger reported her pain was worse when active and she felt little pain when at rest.  (Tr. 393).  Prior treatment notes indicate sitting or standing for prolonged periods of time or too much activity resulted in more pain. (Tr. 373-88).

Vicodin (Hydrocodone) in May 2010 using it intermittently for arthritis pain . . . [and] was noted as achieving relief with the Hydrocodone. She . . . reported that she felt the Hydrocodone had done a good job of controlling her pain." Id.

ALJ Larsen also considered several medical procedures Krueger underwent to treat her pain including the epidural steroid and trigger point injections, cervical disc fusion, and thoracic and lumbar radiofrequency ablations. (Tr. 14-15). With regard to Krueger's medical procedures the ALJ stated, " . . .the claimant's cervical fusion had been successful." (Tr. 14). "She also was noted as having undergone thoracic and lumbar radiofrequency ablation with good results." (Tr. 15). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010). Additionally, plaintiff had not been placed on any functional restrictions by her primary treating physicians. The ALJ considered this evidence. (Tr. 16). A lack of functional restrictions is inconsistent with a disability claim. Middlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 1993).

"If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, [the court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). Here, the ALJ gave good reasons for discounting the plaintiff's subjective testimony as less than fully credible, given the objective medical evidence and inconsistencies in the record as a whole. It appears the ALJ thoroughly evaluated the record, considered the Polaski factors, and based on the inconsistencies in the record as a whole gave good reasons for discrediting the subjective statements offered by the plaintiff and third parties. Substantial evidence exists on the record as a whole to support the ALJ's credibility determination.

**B. Credibility Analysis of Third-Party Lay Witnesses**

Krueger contends ALJ Larsen committed reversible error because she failed to address third-party statements submitted by Krueger's husband and daughter. Plaintiff's Br., at 22, Doc. #11. The Commissioner asserts the ALJ discredited the third-party statements of Krueger's husband and daughter for the same reasons she concluded Krueger's subjective complaints were less than credible, and therefore a reversible error does not exist. Defendant's Br., at 17-18, Doc. #13.

In addressing the third-party statements of Krueger's husband and daughter, ALJ Larsen stated, "The undersigned has considered these and notes they are fundamentally consistent with the claimant's allegations referenced above. . . . [S]imilar weight is afforded these third party statements as the claimant's allegations for the reasons discussed throughout this decision." (Tr. 14). "[W]hile it is preferable that the ALJ delineate the specific credibility determinations for each witness, an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency has no bearing on the outcome." Buckner v. Astrue, 646 F.3d 549, 559 (8th Cir. 2011).

Although ALJ Larsen did not list specific reasons for discrediting each of the third-party statements submitted by Krueger's husband and daughter, the court can determine the ALJ at least considered the testimony of Krueger's husband and daughter, as cited from the record above. Here, it is clear the same evidence that the ALJ determined discredited the claimant's subjective complaints was also used to discredit the third party statements of claimant's capabilities. Krueger's daughter and husband generally reported her activities as relatively sedentary, consistent with

claimant's testimony.[6]   As noted in the court's review of the ALJ's credibility analysis of Krueger's

subjective complaints of pain, the ALJ gave good reasons for discounting the plaintiff's subjective

testimony as less than fully credible given the objective medical evidence and inconsistencies in the

record as a whole.  Therefore, the ALJ's determination that the statements of Krueger's daughter

and husband are as credible as Krueger's own statements based on the same evidence is a sufficient

analysis of third-party statements.

Preferably an ALJ should provide specific reasons for the weight given each witness's

testimony, however this method is not required of an ALJ.  Robinson v. Sullivan, 956 F.2d 836 (8th

Cir. 1992)(upholding an ALJ's denial of benefits where it was evident the ALJ determined third-

party witness testimony was not credible with the same evidence that discredited claimant's

testimony).  Nevertheless, in this instance, the ALJ's failure to enumerate specific reasons to support

her determination that the third-party statements were less than credible does not require this court to

reverse the ALJ's denial of disability benefits.

**C.  Treating Physician's Opinion**

Krueger argues the ALJ erred by failing to attribute proper weight to the opinion of her

treating physician, Dr. Patrick Emery.  Plaintiff's Br., at 14, Doc. #11.

"A treating physician's opinion is generally entitled to substantial weight, [but] such an

---

[6] Krueger's husband testified that she could not lift anything heavy, must use a shopping
cart or his arm for support during shopping excursions, needed assistance to undress, and must
alternate between standing and sitting. (Tr. 207).  Krueger's daughter, who lives in Florida, testified
that she personally sees her mother two to three times a year and speaks with her on the phone daily.
(Tr. 210-11).  Krueger's daughter also testified that she has observed during Krueger's visits that
her mother has difficulty lifting "a gallon of milk," suffers from pain in her right hip if she walks too
long during shopping trips, and has difficulty blow drying her hair because of the pain in her left
arm.  Id.

opinion is not conclusive in determining disability status, and the opinion must be supported by medically acceptable clinical or diagnostic data." Casey v. Astrue, 503 F.3d 687, 691 (8th Cir. 2007)(citation omitted). A treating source's opinion should be given controlling weight if it is not inconsistent with other substantial evidence in the record. Id. "If an ALJ determines not to grant controlling weight to a treating physician's opinion, medical opinions are further evaluated under the framework described in 20 C.F.R. § 404.1527(d)." Lorence v. Astrue, 691 F.Supp.2d 1008, 1029 (D. Minn. 2010). The framework provided by the controlling regulation requires an ALJ to consider six factors when determining the weight assigned to medical opinions: (1) whether the source has examined the claimant; (2) the length of the treatment relationship and the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the quantity of evidence in support of the opinion; (5) the consistency of the opinion with the record as a whole; and (6) whether the source is a specialist. Id.

In weighing Dr. Emery's medical opinion, the ALJ considered the factors listed above, but afforded the opinion only "some weight." (Tr. 16). The ALJ gave several reasons for the weight she assigned to Dr. Emery's opinion. In her decision, ALJ Larsen stated:

> The undersigned has considered [Dr. Emery's] narrative of June 2010 in which he stated that chronic narcotic therapy could *possibly* impair [Krueger] for work. However, this is speculative in nature. He also stated he did not believe that light work would work out very well for the claimant as it would exacerbate her symptoms and make her more disabled in the long run[]. . . . However, this again is fairly speculative. Moreover, it is vague and he declines to give the claimant any function-by-function limitations. . . . [T]he record as discussed throughout this decision does not support a conclusion that she could not engage in basic work activities on a sustained basis so long as she remains within the parameters of the residual functional capacity established above.

(Tr. 16)(emphasis added)(citations omitted). A treating physician's opinion "does not automatically control" in the face of other credible evidence on the record that detracts from that

opinion.  <u>Wilson v. Apfel</u>, 172 F.3d 539, 542 (8th Cir. 1999)(citation omitted).  The court's

thorough review of the record reveals the ALJ's conclusions regarding the inconsistency of Dr.

Emery's statements relating to Krueger's inability to perform light work as compared with the

medical evidence on the record as a whole are accurate.  As discussed above, Krueger's treating

physicians, which include Dr. Emery, never placed her on any functional restrictions.  In fact, Dr.

Emery states in his letter to Krueger's attorney that he has "deferred these restrictions to [Krueger's

medical specialists] in the past."  (Tr. 427).  However, there is no evidence on record that any of the

specialists Krueger visited placed her on functional restrictions that would limit her ability to

maintain substantial gainful activity.  The court's review of Dr. Emery's treatment notes indicate

Krueger maintained "normal gait and station" and  "normal range of motion and strength."

However, Dr. Emery's opinion stated Krueger "has difficulty moving" and then just a few sentences

later stated, "I have never placed her on any restrictions."  (Tr. 427).   Importantly, Dr. Sara

Vandrovec, a physician at Sanford's Pain Management Clinic, who routinely treated Krueger during

the time period at issue and submitted two letters detailing Krueger's impairments and treatments,

failed to outline any functional limitations caused by Krueger's impairments or state that she

imposed functional restrictions.  (Tr. 429-30, 442-43).

After reviewing Dr. Emery's opinion, the court agrees with the ALJ that his opinion is

speculative, vague, and conclusory.  His opinion fails to give a function-by-function assessment of

plaintiff's physical abilities and seems to parrot the claimant's subjective complaints of pain while

contradicting his own treatment notes.  "[A] treating physician's opinion deserves no greater respect

than any other physician's opinion when [it] consists of nothing more than vague, conclusory

statements."  <u>Wildman v. Astrue</u>, 596 F.3d 959, 964 (8th Cir. 2010).  In addition, Dr. Emery's

statement that light work would make Krueger "more disabled" is a legal conclusion which is strictly within the purview of the Commissioner. "A medical source opinion that an applicant is 'disabled' or 'unable to work,'. . . involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Based on the objective medical evidence, the inconsistencies in the record as a whole, and a consulting non-examining physician opinion, the ALJ properly assigned only "some weight" to Dr. Emery's medical opinion. The court finds that substantial evidence on the record as a whole supports the ALJ's decision, and therefore the ALJ properly evaluated Krueger's treating physician's medical opinion.

### D. ALJ's RFC Determination & Substantial Evidence

Finally, Krueger argues the ALJ's residual functional capacity assessment (hereafter "RFC") is not supported by substantial evidence. Plaintiff's Br., at 23-26, Doc. #11. Specifically, Krueger asserts the ALJ improperly relied on a medical opinion given by non-examining physician, Dr. Marlin Johnson, to form the basis of her RFC assessment. Id. Krueger takes issue with Dr. Johnson's opinion because he did not offer an opinion on Krueger's ability to perform light work prior to July 2010 and he did not consider treatments she received after he provided his opinion. Plaintiff's Br., at 23-26, Doc. #11. The Commissioner contends determination of Krueger's RFC is strictly an assessment for the ALJ to make after considering all the evidence on record and was not limited to medical opinion evidence alone. Defendant's Br., at 18-20, Doc. #13. An ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000). However, "it is the claimant's burden to establish her RFC at step four." Id.

Although Krueger insists ALJ Larsen relied solely on Dr. Johnson's opinion to form the basis of her RFC assessment, the court finds it is evident from the ALJ's decision that she relied on other evidence to support her RFC determination. In her decision, the ALJ noted, "the undersigned has considered and generally accepts the State Agency consultant's assessment that the claimant retains the ability to engage in a range of light work activities. This is *essentially consistent with the objective observations of record* as discussed throughout this decision." (Tr. 16)(emphasis added). The court agrees with the Commissioner. Clearly, ALJ Larsen considered the opinion evidence of Dr. Johnson in combination with her review of the objective medical evidence on record, and the record as a whole. As further example of the ALJ's consideration of both medical opinion evidence and other evidence on record is her addition of a sit/stand option to Krueger's RFC. (Tr. 16). The ALJ noted, "[I] integrated a sit/stand option . . . based in part on the claimant's subjective complaints." Id.

In assessing Krueger's RFC, the ALJ relied on Dr. Johnson's assessment of Krueger's capabilities and limitations, the objective medical evidence on record, which included physicians' objective examinations and treatment notes and Krueger's own descriptions of her symptoms during exams, and finally Krueger's subjective testimony of her pain and limitations, which the ALJ found not to be fully credible. The court's review of the record and hearing testimony indicates substantial evidence supports the ALJ's determination that while Krueger's severe impairments impose some pain and limitations, her complaints of severe and disabling pain that preclude all substantial gainful activities are inconsistent with evidence on the record as a whole. Therefore, the ALJ's determination of Krueger's RFC is proper.

## Conclusion

After considering the errors alleged by Krueger and the evidence on the record as a whole, it is **RECOMMENDED** that the plaintiff's Motion for Summary Judgement (Doc. #10) be **DENIED**.  It is further **RECOMMENDED** the defendant's Motion for Summary Judgment (Doc. #12) be **GRANTED** and judgment be entered **AFFIRMING** the decision of the Commissioner.

## Notice of Right to Object

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.

Dated this 1st day of July, 2013.


 /s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge